UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.                                                     Case No. 6:14-CR-265-ORL-37GJK

**DAVID JACOB WILLIAM GUITE,**

    **Defendant.**
_____/

**DAVID GUITE'S SENTENCING MEMORANDUM**

David Guite, by and through his undersigned attorney, respectfully submits this Sentencing Memorandum in support of his request for a reasonable sentence in the instant case. Mr. Guite respectfully requests that the Court grant a downward variance from the applicable Sentencing Guidelines range based on the sentencing factors enumerated in 18 U.S.C. § 3553(a). Mr. Guite respectfully submits that his advisory guideline of 80 years' imprisonment is high and unreasonable. Mr. Guite would ask this Court to consider a sentence within the statutory provisions of Count 1, which provide for a sentence of 15 to 30 years, and allow the remaining counts to be sentenced concurrently.

A below-guidelines sentence is significant punishment for a young man who has never been in prison, who has suffered from severe depression and mood disorder since childhood, and suffered from neglect and inadequate nurturing as a child. Mr. Guite began the road to recovery by taking responsibility for his actions when law enforcement interviewed and arrested him on October 29, 2014.

Mr. Guite's childhood neglect, combined with his mental health issues, has significantly contributed to his inability to show good judgment in his interpersonal behaviors. Mr. Guite's mother depended on him to satisfy her emotional needs. Mr. Guite idolized his mother in order to get more attention from her. As a result, Mr. Guite was not socialized in an emotionally healthy manner. His first child, Diona Guite, died in 2002 from SIDS when she was three months old. Mr. Guite cared for his mother during her illness, and stood by helplessly as she withered away and died in 2009. At the time of his arrest in 2014, Mr. Guite was living with his father and providing him with care. Mr. Guite's depression worsened with each of these stressful life events. He self-medicated with marijuana, but did not receive the psychological counseling he needed. All of these factors contributed to Mr. Guite's commission of the instant offense.

### Mr. Guite's Offense Conduct

On February 20, 2014, Mr. Guite pled guilty to two counts involving the production of child pornography, and one count of possession of child pornography. Doc. 28. Mr. Guite pled guilty pursuant to a plea agreement with the government. He agreed to waive his right to appeal his sentence except under limited circumstances, and he agreed to make full restitution to the victims of his offense conduct. Mr. Guite has accepted full responsibility for his actions, and tells the Court that he is ashamed and truly remorseful for the pain his has caused to everyone. *See* Mr. Guite's letter to the Court.

The Presentence Report ("PSR") accurately sets forth Mr. Guite's offense conduct. PSR, ¶¶ 6-15. Mr. Guite shared images of child pornography with an undercover agent.

When FBI agents executed a search warrant at Mr. Guite's residence on October 29, 2014, he was cooperative and told the agents that he had made and shared such images using the Kik messenger app on his cell phone. Mr. Guite's images of Victims 1 and 2 did not involve sexual activity, penetration, or torture. Most of the images did not show the children's faces.

After Mr. Guite's arrest, agents interviewed the two victims. Both victims did not appear to be visibly shaken by Mr. Guite's conduct.

## The Advisory Sentencing Guidelines

The PSR finds that Mr. Guite's total offense level is 43; his criminal history category is I; and the resulting advisory sentencing range is 960 months, or 80 years. PSR ¶ 91. Mr. Guite faces a mandatory minimum sentence of 15 years. Mr. Guite pled guilty pursuant to a plea agreement to three specific counts in the indictment. The PSR calculates this sentence by running the statutory maximum sentence in every count consecutive to each other.

Mr. Guite respectfully submits that his guidelines are unduly harsh and unreasonable, and that a review of the enumerated factors in 18 U.S.C. § 3553(a) suggest that a variance is appropriate. Mr. Guite pled guilty in a timely manner. He takes responsibility for his actions. No victims were subjected to the stress and pressures of a trial. Given the acts in this case, a sentence of 960 months is not necessary to serve the purposes of sentencing. A sentence significantly below the advisory sentencing range is reasonable in this case.

## Current Federal Sentencing Law

As the guidelines are now advisory and a guideline range may not even be presumed to be reasonable, the Court must examine each case under the directives of 18 U.S.C.

3

§ 3553(a) to impose "a sentence sufficient, but not greater than necessary" to meet the objectives of sentencing. 18 U.S.C. § 3553(a); *see also United States v. Booker*, 543 U.S. 220 (2005); *Kimbrough v. United States*, 552 U.S. 85 (2007). Of specific relevance to this case, § 3553(a) directs the Court to consider (1) the nature and circumstances of the offense and the history and characteristics of the offender; (2) the need to impose a sentence that: reflects the seriousness of the offense, promotes respect for the law and provides just punishment for the offense, affords adequate deterrence, and protects the public from further crimes of the defendant; and (3) the need to avoid unwarranted disparity among defendants who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(1-2,6). These factors bear strongly in favor of a variance for Mr. Guite.

### Mr. Guite's History and Characteristics

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 113, 116 (1996). A downward variance is warranted based on Mr. Guite's "history and characteristics." 18 U.S.C. § 3553(a).

  **1.**  **Mr. Guite's Formative Years**

Mr. Guite is 31 years old. He was born and raised in Rochester, New York, in a dysfunctional home. Mr. Guite's mother, Debbie Guite, suffered from sarcoidosis, an autoimmune disease, which affected her lungs and her ability to breathe without the

assistance of oxygen. Mr. Guite's father, Glenn Guite, suffered from alcoholism, drug abuse, and mental illness. When Mr. Guite was six years old, his father went to prison for a sex offense with his step-daughter. Debbie Guite became a practicing Wiccan/Pagan, and Mr. Guite joined WICCA as well. Debbie Guite depended on Mr. Guite to meet all of her emotional needs, but he was only a child. Mr. Guite's half-sister was removed from the home when she was 15, so Glenn Guite could reunite with his family. Mr. Guite's half-sister helped raise him, and he was upset and dispirited when she was forced to leave the home.

Mr. Guite was diagnosed with depression when he was in third grade. He was given prescribed medication, but no mental health counseling. Mr. Guite struggled in school because he had difficulty concentrating and he suffered from low self-esteem.

When Mr. Guite was 15 years old, he and his mother moved to Deland, Florida, in the hope that Debbie Guite's health would improve, or stabilize. Mr. Guite had to care for his mother, and watch her health deteriorate.

Mr. Guite's girlfriend in high school, Amanda Black, got pregnant. Mr. Guite dropped out of high school during his junior year in order to support Amanda Black and their child. Their daughter was born in December 2001. She died three months later from SIDS. Mr. Guite was overwhelmed with grief, and his depression worsened. His relationship with Amanda Black ended after their daughter's death.

    **2.**     **Mr. Guite's Adulthood**

Mr. Guite continued to work full time, and he obtained his GED in 2003. He continued his education and received an Associate degree in Cyber Security. He continued

to live with his mother and take care of her. Debbie Guite died in 2009. Mr. Guite's life completely unraveled without his idol in his life. He became even more depressed. However, Mr. Guite did not seek counseling. He allowed his sadness to grow inside him.

Mr. Guite married Randi Moreno in 2009. They married when Ms. Moreno was pregnant with their first son. They have two boys, ages 3 and 5. Mr. Guite's relationship with Ms. Moreno was unstable due to their immaturity, and they separated in 2011. Their divorce was final in 2013. Mr. Guite shared custody with his ex-wife until his arrest in this case.

After Mr. Guite and Ms. Moreno separated, he lived with his father. Mr. Guite was Glenn Guite's caretaker until his arrest. Glenn Guite suffered a back injury years ago, was recently treated for cancer, and has a heart condition for which he receives Social Security Disability Benefits. Glenn Guite tells the Court that Mr. Guite has experienced a lot of sadness in his life. *See* Glenn Guite's letter to the Court. Glenn Guite wishes that he could have helped Mr. Guite cope with the deaths of his mother and daughter, but Glenn Guite was in poor health and grieving himself. *Id.* Glenn Guite supports his son despite what he did, and he asks the Court for mercy in imposing judgment. *Id.*

3.  **Mr. Guite's Resolve to Change**

Mr. Guite apologizes for his inexcusable and terrible actions that bring him before this Court. *See* Mr. Guite's letter to the Court. He regrets his actions and the damage he has caused to his loved ones. *Id.* He assures the Court that his sentencing date will be his last day in court. *Id.* Mr. Guite wants to receive professional help so he can lead a productive

life upon his release from prison.  He knows that he faces a lengthy period of incarceration, but he hopes that he will not die in prison.

Mr. Guite has accepted responsibility for his offense conduct, and he exhibits tremendous remorse and anguish over what he did.  He understands that the Court must punish him for his crimes; yet, he hopes that the Court will consider more than just his offense conduct in determining his sentence.  Mr. Guite knows that he cannot change what happened, but he can guarantee that it will never happen again.

### The Requested Sentence Reflects the Seriousness of the Offense, Provides Just Punishment and Adequate Deterrence, and Protects the Public from Further Crimes by Mr. Guite

A sentence of 80 years is not necessary to afford adequate deterrence.  Mr. Guite has been in custody since his arrest on October 29, 2014.  He is a depressed and remorseful man whose limited criminal history consists of misdemeanor possession of cigarettes as a minor, possession of marijuana, and a traffic offense.  This is the first time in his life that he has been in jail.  *See United States v. Qualls*, 373 F. Supp.2d 873 (E. D. Wis. 2005) ("It is appropriate for a court, when considering the type of sentence necessary to protect the public and deter future misconduct, to note the length of any previous sentences imposed.  **Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration**. . . .") (emphasis supplied).

Mr. Guite's crimes are terrible, and he must be punished for victimizing children.  Although his crimes are serious, his conduct is less heinous than many production of child pornography cases.  Mr. Guite suggests that a sentence of 80 years is unreasonable, when

7

viewed in light other defendants in the this Circuit who received such a sentence for their criminal conduct. *Compare United States v. Irey*, 612 F.3d 1160 (11th Cir. 2010) (remanding case and stating that nothing less than a 30-year sentence is reasonable for a man who raped, sodomized, and tortured of over 50 children over several years and distributed child pornography on the internet); *United States v. Hodnett,* 210 Fed. App'x. 949 (11th Cir. 2006) (30-year sentence for the defendant, who fell within criminal history category I, who possessed at least 600 images of child pornography, some of which depicted prepubescent minors engaged in sexual activity, traded images of child pornography over the internet, and had in the past, engaged in the following sexual activities with minors: kidnaping and raping a 6-year-old Vietnamese girl in 1969 while serving in Vietnam; molesting and engaging in sexual intercourse with his two step-daughters in the 1970s; and engaging in oral sex with a 6-year-old girl in 2004); and *United States v. Kapordelis*, 569 F.3d 1291 (11th Cir. 2009) (35-year sentence for the defendant, who fell within criminal history category I, who over a span of at least 20 years: drugged two boys, aged 11 and 14, on three occasions before photographing their genitalia; traveled abroad, where he molested and took digital videos and pictures of three minors, some of whom he had drugged, and engaged in oral and anal sex with at least one 17-year-old; solicited sex from male prostitutes under the age of 18 while in foreign countries; drugged his 16-year-old second cousin and then videotaped himself having sex with the minor; and possessed approximately 10,580 images and 400 videos of child pornography, some of which featured victims he had personally molested).

Mr. Guite understands that the facts of each case different. There is no dispute that

Mr. Guite's actions were reprehensible. However, a guideline sentence is not necessary for just punishment.

Mr. Guite is sincere when he says that he will never inappropriately touch a child again or view child pornography. He wants counseling and treatment for his mental health issues. He is taking prescribed medication for depression and a mood disorder. He has expressed extreme remorse for his actions and what he did will haunt him for the rest of his life. He prays that the victims will not have permanent scars from what he did to them. He will face a substantial time in prison – at least 15 years. He will have a life time of supervised release and reporting as a sex offender. A sentence below the guidelines sufficiently reflects Mr. Guite's offense conduct and justly punishes him.

While sex offenders, and child sex offenders particularly, are conventionally considered to have high rates of recidivism, the studies underlying this conclusion have been discredited as methodologically flawed, due to, for example, equivocating past conduct with post-sentencing recidivism, implicitly encouraging offenders to invent fictional crimes, removing non-recidivists from study figures, and other design issues. *See, e.g.* Richard Wollert, *The Implications of Recidivism Research and Clinical Experience for Assessing and Treating Federal Child Pornography Offenders: Written Testimony Presented to the U.S. Sentencing Commission*, 7-14 (February 15, 2012), *available at* http://www.ussc.gov/Legislative_and_Public_Affairs/Public_Hearings-and_Meetings/20120215-16/Testiimony_15_Wollert_2.pdf (collecting studies and critiquing methodology). More scientific studies have shown the opposite: that with proper treatment,

9

child sex offenders, even those with prior contact incidents, are not at high risk of recidivism, and in some cases may be lower than the inmate population in general. *Id.* at 17. Thus, at a minimum, the presumption that a defendant will be likely to reoffend purely because of a past history of sex crimes or crimes against children should be discarded, and each defendant analyzed individually. As noted above, Mr. Guite is unlikely to reoffend, based on his self awareness and acceptance of responsibility for his crimes, and his desire for treatment.

## CONCLUSION

Mr. Guite must and will be punished for his crime. He will serve a lengthy prison sentence of no less than 15 years. There is no doubt that given his history and characteristics, his willingness to participate in counseling, and his low risk for recidivism, a sentence below the applicable sentencing range of 80 years serves the purposes of sentencing. For the reasons stated herein, Mr. Guite respectfully urges the Court to sentence him to a reasonable sentence below the applicable sentencing range.

Respectfully submitted,

Donna Lee Elm
Federal Defender

 /s/ *Angela Parrott*
Angela Parrott
Assistant Federal Defender
North Carolina Bar Number 35490
201 South Orange Avenue, Suite 300
Orlando, Florida  32801
Telephone 407-648-6338
Facsimile 407-648-6095
E-Mail: angela_parrott@fd.org
Counsel for David Guite

**Certificate of Service**

I hereby certify that the undersigned attorney filed the foregoing *David Guite's Sentencing Memorandum* with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to Embry Jerode Kidd, Assistant United States Attorney, Orlando Division, this 4th day of May 2015.